**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re FORD MOTOR COMPANY ERISA
LITIGATION

Consolidated Cases
Master Case No. 06-cv-11718

Honorable Paul V. Gadola
Magistrate Steven D. Pepe

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATIONS**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................................ii, iii

QUESTIONS PRESENTED....................................................................................................iv

I.    INTRODUCTION ........................................................................................................1

II.   STATEMENT OF FACTS ............................................................................................3

III.  ARGUMENT..................................................................................................................4

      A.    Standard of Review............................................................................................4

      B.    The R&R Erred in Concluding That Allegations That Ford Stock
           Was Excessively Risky For Plan Participants Are Sufficient to
           Rebut the Presumption of Prudence Afforded to Plan Investments
           in Company Stock.............................................................................5

      C.    The R&R Erred in Concluding that the Plan Amendments Were
           Fiduciary Acts Rather Than Expressions of Settlor Intent to Continue
           the Ford Stock Fund......................................................................................11

CONCLUSION.......................................................................................................................14

i

## INDEX OF AUTHORITIES

CASES

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965-1966 (2007)...............................4

*Coleman v. Granholm*, No. 06-12485, 2008 U.S. Dist. LEXIS 26335
(E.D. Mich. April 2, 2008)............................................................................4

*Curtiss Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995)....................................13

*DiFelice v. US Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006).........................6,8,9

*DiFelice v Us Airways, Inc.*, 497 F.3d 424 (4th Cir. 2007).........................................6,9

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) ............................................13

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995)........................................................1, 2 , 5, 6, 7,
.....................................................................................................................8, 9, 11, 12

*Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*,
173 F.3d 313 (5th Cir. 1999) ..........................................................................10

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)..........................................................13

*Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) ....................................................5, 11

*Rogers v. Baxter Int'l. Inc.*, No. 06-3241, -- F.3d – (7th Cir. April 2, 2008)..............8

*Sullivan & Long v. Scattered Corp.*, 47 F.3d 857 (7th Cir. 1995).............................7

*Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006);
*cert. denied*, 127 S.Ct. 1249 (2007)................................................................7, 8

STATUTES

29 C.F.R. § 2550.404a-1 ...............................................................................................10

29 U.S.C. § 1001 (ERISA)..........................................................................................iv

29 U.S.C. § 1104(a)(1)(C) and (2).............................................................................5

29 U.S.C. § 1107(d)(6)(A) ........................................................................................5,9

OTHER

Fed. R. Civ. P. 72(b) ................................................................................................4

Eugene Fama, "Efficient Capital Markets:  A Review of Theory and Empirical
    Work," 25 J. Fin. 383 (1970) .......................................................................7

Transcript of Motion Hearing (Mar. 4, 2008), 40:15-16 ...........................................8

**QUESTIONS PRESENTED**

1.  Whether the report and recommendation conflicts with ERISA[1] and controlling Sixth Circuit authority by holding that the presumption of prudence afforded to fiduciary decisions to follow plan terms and allow investment in company stock can be rebutted simply by alleging that public information about Ford's financial condition made the stock excessively risky?

2.  Whether the report and recommendation erred by holding, contrary to controlling U.S. Supreme Court authority, that the 2006 amendments to the plans—in which Ford, as settlor, expressly confirmed its intent to allow continued investment in company stock, —were fiduciary acts?

---

[1] Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §100 *et seq*.

## I.    INTRODUCTION

In their Consolidated Complaint ("Complaint"), Plaintiffs allege that Defendants breached their fiduciary duties under ERISA by maintaining the Ford Stock Fund as one of dozens of investment options in certain employee savings plans[2] sponsored by Ford Motor Company ("Ford" or "Company").  Plaintiffs' claim is that Defendants were required to override the express terms of the Plans and eliminate the Ford Stock Fund as an investment option because publicly disclosed information about Ford's financial condition and declining stock price made investment in Ford stock "too risky" for Plan participants.  Because this theory has no logical limiting principle, it would eliminate or severely discourage company stock funds in ERISA plans – contrary to express Congressional policy to encourage such investment.  Not surprisingly then, this theory of fiduciary liability has been rejected by the Sixth Circuit and other courts confronted with it.  It should be rejected here as well.

On March 31, 2007, Magistrate Judge Pepe issued a Report and Recommendation ("R&R") denying Defendants' Motion to Dismiss, holding that the series of publicly disclosed market conditions, management decisions, business problems, and declining stock price alleged in the Complaint—a constellation of events the R&R characterized as "one damned thing after another" (R&R at 30)—adequately stated a claim for relief.  In so holding, the R&R adopted the very theory of fiduciary liability soundly rejected by the Sixth Circuit  in *Kuper v. Iovenko*, 66 F.3d 1447, 1460 (6th Cir 1995) (denying prudence claim based on facts showing that fiduciaries "were aware of events that would continue to cause [the company] stock to decline in value").

---

[2]    The plans at issue include the Ford Motor Company Savings and Stock Investment Plan for Salaried Employees (the "SSIP") and the Ford Motor Company Tax-Efficient Savings Plan for Hourly Employees (the "TESPHE") (collectively, the "Plans").

If adopted, the R&R would transform fiduciaries into virtual guarantors of the performance of company stock funds because when the company stock price falls in response to public information, it always can be claimed that the stock was too risky. Such an expansive theory of liability would not only rewrite ERISA law – effectively eliminating ERISA's exemption of company stock funds from the duty to diversify – it is particularly inappropriate here since the Ford Stock Fund is simply one of dozens of investment options available to Plan participants, who are free to determine whether to invest and how much to invest in company stock based on the same public information available to the fiduciaries.

Not only does the R&R effectively reverse the Congressional policy of encouraging company stock funds in ERISA plans, but it also ignores the express holding in *Kuper* that, to overcome the presumption of prudence, a plaintiff must show that the fiduciary could not reasonably believe that the plan drafter or "settlor" intended to continue offering company stock as an investment option under the circumstances. Here, the settlor's intent to maintain the Ford Stock Fund as an investment option in the Plans is indisputable: not only do the original Plan documents provide for the Ford Stock Fund, but Ford amended the plans in April, 2006—**after most of the adverse business developments on which Plaintiffs rely**—to reiterate its intent to maintain the Ford Stock Fund as an investment option in the Plans. The clear settlor intent, both as stated initially and reaffirmed after the public information alleged in the Complaint was available, preclude any conclusion in this case that the Defendant fiduciaries had a duty to override the express terms of the Plans.

Finally, by treating the Plan amendments as fiduciary acts, the R&R directly contradicts a trio of decisions by the U.S. Supreme Court which hold that the acts of creating, amending or terminating a plan are settlor functions that fall outside of ERISA's fiduciary strictures.

For the reasons that follow, Defendants respectfully request that this Court reverse the R&R and enter an order granting Defendants' motion to dismiss.

## II.     STATEMENT OF FACTS

Ford sponsors the Ford Motor Company Savings and Stock Investment Plan for Salaried Employees and the Ford Motor Company Tax-Efficient Savings Plan for Hourly Employees. (Compl. ¶¶ 1, 23.)   Ford established the SSIP and the TESPHE to assist its employees in systematically saving and investing for retirement, and to "provide them with an opportunity to become stockholders of the Company." (R&R at 3.) Plan participants may invest their contributions in one or more of dozens of investment options specified in the Plan documents, including the Ford Stock Fund, the Common Stock Index Fund, the Bond Index Fund, the Interest Income Fund, and a large number of mutual funds and other investment funds with a range of risk and return characteristics. (*Id*. at 4-5.) The lead plaintiffs in this action, both participants in the SSIP, brought suit against Ford and the individually named defendants on behalf of themselves and all other persons who were participants in or beneficiaries of the Plans between April 15, 2000 and April 30, 2007. (*Id*. at 7-8; Compl. ¶¶ 285-87.)

The Complaint asserts three claims for relief under ERISA. First, the Complaint alleges that certain Defendants breached their duties of loyalty and prudence to the Plans because they could not have reasonably believed that the continued investment of the Plans' contributions and assets in Ford stock was consistent with the settlor's expectations of how a prudent fiduciary would operate. (Compl. ¶¶ 242, 246, 249-251.) Second, the Complaint alleges that certain Defendants breached their fiduciary duties by failing to monitor the performance of other fiduciaries, and in doing so failed to take action to prevent losses to the Plans with respect to their investment in Ford stock. (*Id*. ¶¶ 254-56, 258-61.) Finally, the Complaint alleges that the

3

Defendants are liable under ERISA as co-fiduciaries for breaches of duty committed by other defendants. (*Id*. ¶¶ 264-74.)

Defendants filed a motion to dismiss the Complaint on June 29, 2007, arguing that Count I should be dismissed because the allegations precluded Plaintiffs from rebutting the presumption of prudence afforded to ESOP investments in company stock. Defendants further argued that Counts II and III should be dismissed as derivative of Count I. On March 4, 2008, the court held a hearing on the motion to dismiss. On March 31, 2008, Magistrate Judge Pepe issued the R&R and recommended denying Defendants' motion to dismiss on grounds that the allegations were sufficient to rebut the presumption of prudence afforded to ESOP investments in company stock. The R&R stated that the Complaint alleged substantial bases for establishing that Ford stock became an imprudent investment for the Plans (R&R at 33) and also described the various amendments to the Plans during the putative Class Period as fiduciary acts that did not support Defendants' motion to dismiss. (*Id*. at 39.)

## III.   ARGUMENT

### A.   Standard of Review

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the Court evaluates Defendants' objections to the R&R *de novo*. *See* Fed. R. Civ. P. 72(b); *Coleman v. Granholm*, No. 06-12485, 2008 U.S. Dist. LEXIS 26335, at*4 (E.D. Mich. April 2, 2008). In order to state a valid claim, plaintiffs must *allege facts* establishing that their right to relief is "plausible." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007).

4

B.    **The R&R Erred In Concluding That Allegations That Ford Stock Was Excessively Risky for Plan Participants Are Sufficient To Rebut The Presumption Of Prudence Afforded To Plan Investments In Company Stock**

Defendants agree with the R&R's conclusion that the Ford Stock Fund within the Ford employee savings plans is an ESOP and an eligible individual account plan ("EIAP"); that the Ford Stock Fund is exempt from ERISA's diversification requirements, *see* 29 U.S.C. § 1107(d)(6)(A); that the strong presumption of prudence recognized in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995) applies to the fiduciaries' decision to continue offering the Ford Stock Fund as an investment option in the plans; that the presumption of prudence can be overcome only by showing that "no reasonable fiduciary in similar circumstances would have continued investing in company stock" (R&R at 28 n.14); and that the presumption of prudence applies on a motion to dismiss, requiring the plaintiff to plead facts that, if true, state a plausible basis to overcome the presumption of prudence.    However, notwithstanding those well-reasoned conclusions, Defendants object to the R&R's conclusion that the allegations in the Complaint are sufficient to rebut the *Kuper* presumption of prudence

ERISA provides a complete exemption from the statutory diversification requirements with respect to ESOP investments in company stock. *See Kuper*, 66 F.3d at 1458 ("[A]n ESOP fiduciary is exempted from ERISA's duty to 'diversify the investments of the plan.' Thus, as a general rule, ESOP fiduciaries cannot be held liable for failing to diversify investments[.]") (citing 29 U.S.C § 1104(a)(1)(C) and (2)).)  In assessing the prudence of ESOP investment decisions, the Sixth Circuit acknowledged that a strict standard of review "'would render meaningless the ERISA provision excepting ESOPs from the duty to diversify'" and would "risk transforming ESOPs into ordinary pension plans, thus frustrating Congress's desire to encourage employee ownership and contravening the intent of the parties." *Id.* at 1458-59 (citing *Moench v. Robertson*, 62 F.3d 553,

5

570 (3d Cir. 1995) ).  Accordingly, courts in this Circuit look first to settlor intent in determining

the prudence of ESOP investments.  *Kuper*, 66 F.3d at 1459.  Under the *Kuper* standard, ESOP

investments in company stock are presumptively prudent unless "no reasonable fiduciary in similar

circumstances would have continued investing in company stock."  (R&R at 28 n.14.)

While acknowledging *Kuper* as controlling (*id*. at 12-13), the R&R concluded that

allegations based on purely public information suggesting that Ford stock was "excessively risky"

were sufficient to rebut the "very heavy" presumption of prudence.  (*Id*. at 30-41.)  To meet their

burden, the court reasoned, Plaintiffs are only required to show that "a constellation of 'one

damned thing after another'" caused losses to the Plans.  (*Id*. at 30.)  But *Kuper* rejected a claim

of fiduciary breach based on such a theory.  *Kuper*, 66 F.3d at 1460 (denying prudence claim

based on allegations that fiduciaries "were aware of events that would continue to cause [the

company] stock to decline in value"); *see also DeFelice v. U.S. Airways, Inc.*, 497 F.3d 424 (4[th]

Cir. 2007).  Although *Kuper* was decided after trial, it rejected this theory as a matter of law.

As the R&R recognizes, overriding the presumption of prudence on the grounds alleged in

the complaint has no limiting principle. (R&R, p. 28, n. 12 ("The line, unfortunately, is not a bright

one.").)[3]  This theory, if allowed, would overwhelm ERISA's exemption of company stock funds

from the duty to diversify by allowing every fiduciary decision to be second guessed and subjected

to the strict review that ERISA forbids. As *Kuper* and other cases have recognized, permitting such

a claim is incompatible with ERISA's exemption of company stock funds from the duty to

---

[3]   As reflected in the R&R, Ford identified two limiting principles that are either explicit or
     implicit in the case law – factual allegations that the fiduciaries knew the company faced
     imminent collapse or that its stock price was artificially inflated by fraud. The R&R rejected
     both. Ford the reasons discussed, this was error.

diversify and the presumption of prudence.[4]

Besides contradicting the holding of *Kuper*, the R&R's reasoning that mere allegations of business problems leading to a falling stock price can plausibly overcome the presumption of prudence is flawed in two fundamental respects. ***First***, the R&R adopts an impossible standard by requiring ESOP fiduciaries to override settlor intent based on purely public information about the company's financial condition and business judgments. The economic impact of the publicly disclosed business management decisions identified in the Complaint were fully incorporated into the price of Ford stock. *See Sullivan & Long v. Scattered Corp.*, 47 F.3d 857, 861 (7th Cir. 1995) ("An efficient stock market is one in which stock prices reflect all potentially available information that is relevant to the economic value of the stocks.") (citing Eugene Fama, "Efficient Capital Markets: A Review of Theory and Empirical Work," 25 J. FIN. 383 (1970)). Accordingly, the Complaint ultimately rests on the theory that the Defendants should have taken the extraordinary step of overriding the express terms of the Plans based on their contemporaneous assessment that the market had inaccurately priced the risks of Ford's publicly disclosed financial condition. Such a standard requires the fiduciaries to outguess the stock market, a proposition that courts have soundly rejected. *See, e.g.*, *Summers v. State St. Bank & Trust Co.*, 453 F.3d 404, 408 (7th Cir. 2006) (Posner, J.) ("[It] is not imprudent to assume that a major stock market [index] . . . provides the best estimate of the value of the stocks traded on it . . . , [and] it would be hubris for a [fiduciary] to think it could predict [a company's] future more accurately than the market could."),

---

[4]   The R&R itself acknowledges that numerous courts have dismissed such claims on the pleadings (*see* R&R at 21-22), but distinguished those cases on grounds that Ford's alleged financial condition is worse. But here, Ford's financial condition and the attendant risk has been considered by the market and is reflected in the price of Ford stock. Moreover, the alleged decline in the price of Ford stock over the putative class period is no greater than what confronted the court in *Kuper*. *See* 66 F.3d at 1451 (alleging 80% drop in stock price over 18 months).

*cert denied,* 127 S. Ct. 1249 (2007). Plaintiffs' failure to identify any single point in time when Ford stock allegedly became an imprudent investment for the Plans underscores this fundamental flaw in their pleadings. *See* Transcript of Motion Hearing (Mar. 4, 2008), 40:15-16 (Plaintiffs' counsel arguing that prudence is "not an on-off switch; it's a gradation"); *see also Summers,* 453 F.3d at 411 ("determining the 'right' point, or even range of 'right' points, for an ESOP fiduciary to break the plan and start diversifying may be beyond the practical capacity of the courts to determine"); *Rogers v. Baxter Int'l, Inc.,* No. 06-3241, -- F.3d -- (7th Cir. April 2, 2008) ("Plaintiffs maintain that defendants should not have allowed investment in [Company] stock at *any* time…[T]o recover on this theory plaintiffs must demonstrate that [the company's stock] always is overpriced, and that defendants know it. That amounts to an assertion that pension fiduciaries have a duty to outsmart the stock market, a contention with little prospect of success.") (emphasis in original).

   For similar reasons, the R&R erred in concluding that allegations of fraud or knowledge by the fiduciaries of material non-public information about the company are not necessary to rebut the presumption of prudence. (R&R at 25-30.) Although *Kuper* does not expressly require allegations of fraud (*id.* at 25-26), the only plausible basis for concluding that it was imprudent to allow investment in company stock – without undoing the ERISA exemption and presumption of prudence – is to show that the fiduciaries had material information about the value of the stock that the market did not. *DeFelice v. US Airways, Inc.,* 436 F. Supp. 2d 756, 786 & n.22 (E.D. Va. 2006) ("Because the risks facing US Airways were publicly disclosed . . . this case can be easily distinguished from those cases in which employees were offered as an investment option company stock whose price was artificially inflated by management's material misrepresentations."). In that circumstance, the fiduciary might conclude that the settlor did not intend to offer over-valued stock

and therefore act reasonably in overriding the terms of the plan. *A fortiori*, where, as here, the allegations make clear that the fiduciary has no such information, there is no plausible basis to conclude that the fiduciary's decision to abide by the express terms of the Plans and continue offering accurately-priced company stock is imprudent.

*Second*, the R&R erred in concluding that the allegation that Ford stock is "excessively risky" for the Plans is sufficient to rebut the *Kuper* presumption of prudence. (R&R at 27.) As an initial matter, that holding abandons the strong Congressional policy to *encourage* employee ownership of company stock notwithstanding the inherent risks associated with investing retirement assets in any single stock. *Kuper*, 66 F.3d at 1457 ("In drafting the ESOP provisions of ERISA, Congress intended to encourage employees' ownership of their employer company."). In furtherance of that policy, Congress carved out specific exceptions to ERISA's general fiduciary duties—including the general diversification requirements—to *promote* the objective of employee stock ownership. *Id.* (citing 29 U.S.C. § 1107(d)(6)(A) (requiring ESOPs to invest primarily in "qualifying employer securities")); *see also DiFelice*, 497 F.3d at 424 ("[A]lthough placing retirement funds in *any* single-stock fund carries significant risk, and so would seem generally *imprudent* for ERISA purposes, Congress has explicitly provided that qualifying concentrated investment in employer stock does not violate the 'prudent man' standard per se.") (emphasis in original). Plaintiffs' suggestion, endorsed in the R&R, that Ford stock could be prudent for *some investors* at the same time it was "excessively risky" for the Plans would turn the presumption of prudence—and the Congressional policy to encourage employee stock ownership—on its head. (R&R at 27; Compl. ¶ 101.)

If anything, the presumption of prudence is even stronger in this case than it was in *Kuper* because the Ford Stock Fund is simply one of many investment options in the Plan, and

9

individual plan participants have the ability to diversify their accounts and invest as much or as little as they want in the Ford Stock Fund. (R&R at 4-6.) The Department of Labor and numerous courts have recognized that the prudence of any plan investment must be viewed in the context of the overall portfolio of investments of which it is part and not in isolation. *See, e.g.,* 29 C.F.R. § 2550.404a-1 (fiduciaries with responsibility for selecting investments should consider "the role the investment . . . plays in that portion of the plan's investment portfolio" and "[t]he composition of the portfolio with regard to diversification"); *Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir. 1999) (reversing breach of fiduciary duty finding where "the district court erroneously judged the . . . investment in isolation under the common law trust standard, instead of according to the modern portfolio theory required by ERISA policy"). The R&R's conclusion that it could not consider "other [plan] holdings" in adjudicating Plaintiffs' claim (*see* R&R at 28 n.14), cannot be squared with that authority – or with the reality facing plan fiduciaries and beneficiaries.

Here, the Plans offered a wide range of designated investment options, including numerous actively and passively managed domestic and international mutual funds and investment funds of different asset classes in addition to the Ford Stock Fund, the Common Stock Index Fund, the Bond Index Fund and the Interest Income Fund. (*Id*. at 4-5.) Plan participants were free to construct well-diversified portfolios for their own accounts by selecting from a menu of investment options that offered different risk and reward characteristics. (*Id*. at 5.) While the Complaint alleges that the Ford Stock Fund was "inherently risky" for retirement plans, the fact of the matter is that Plan participants could choose to avoid that risk, or could easily balance the unique risks of a single stock fund, by investing across the spectrum of asset classes available in the Plans. Moreover, the Plans themselves only supplemented the primary

retirement benefits provided by Ford Motor Company's two defined benefit pension plans. (*Id.* at 3.) These facts significantly strengthen the presumption of prudence.

In sum, Plaintiffs' allegations are insufficient to overcome the presumption of prudence, and especially where, as here, settlor intent is contemporaneous and unambiguous.

**C.     The R&R Erred In Concluding That The Plan Amendments Were Fiduciary Acts Rather Than Expressions Of Settlor Intent To Continue The Ford Stock Fund.**

The Sixth Circuit held in *Kuper v. Iovenko* that to overcome the presumption of prudence, the plaintiff must show that the ESOP fiduciary "could not have reasonably believed that *the plan's drafters* would have intended under the circumstances that he [continue to] invest exclusively in employer securities." *Kuper*, 66 F.3d at 1459 (emphasis added); *see also Moench*, 62 F.3d at 571 ("As in all trust cases, in reviewing the fiduciary's actions, the court must be governed by the intent behind the trust -- in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate."). Here, settlor intent is unambiguous: Ford, as settlor, amended the Plans no fewer than fifteen times during the putative class period and each time elected to maintain the Ford Stock Fund as an investment option in the Plans.[5] As recently as April 2006, Ford expressly reaffirmed its

---

[5] *See* R&R 6-7; *see also* SSIP Plan Document § 8.1(a), as amended and effective September 1, 2001, attached to Compl. as Ex. H, ER00793; SSIP Plan Document § 8.1(a), as amended effective through December 11, 2002, attached to Compl. as Ex. J, ER007867; SSIP Plan Document § 8.1(a), as amended and effective through April 1, 2004, attached to Compl. as Ex. A, ER00722; 2006 SSIP Plan Document § 8.1(a), amended and effective through April 13, 2006 (including amendments made November 8, 2001; November 27, 2001; December 13, 2001; February 11, 2002; August 20, 2002; December 11, 2002; October 1, 2003; March 24, 2004; June 21, 2004; August 30, 2004; November 30, 2004; April 8, 2005; June 28, 2005; October 7, 2005), Ford-ER00130, Compl. Ex. E, Ford-ER00067-69; Compl. Ex. D, ER00422); TESPHE Plan Document § XIII, as effective October 9, 1999, attached to Compl. as Ex. I, ER-00476 (providing that the Ford Stock Fund shall be invested primarily in shares

intention to continue to permit Plan investments in Ford stock.[6] (*See* R&R at 6 ("It is the Company's intent that to the fullest extent permitted by ERISA, that the Ford Stock Fund be a permanent feature of the Plan[.]") (citing 2006 SSIP Plan Document, Art. VIII, § 8.1(a), Ford-ER00130).)

While acknowledging settlor intent as the touchstone for the "safe harbor" for ESOP fiduciaries (R&R at 28 n.14), the R&R erred in two fundamental respects in ignoring Ford's intent to maintain the Ford Stock Fund as an investment option in the Plans. ***First***, the fact that the settlor amended the Plan documents in April 2006 to require the Ford Stock Fund to invest "exclusively," rather than "primarily," in Company stock does not alter the fact that at all times the Plans required the fiduciaries to offer the Ford Stock Fund as an investment option in the Plans. Rather, the significance of those amendments is to reaffirm the intent of Ford—the Plans' drafter—to offer Ford stock as a "permanent feature" of the Plans. And the fact that the April, 2006 amendments came after the majority of the publicly disclosed business decisions catalogued in the Complaint underscores that settlor intent did not change during the putative class period. Thus, notwithstanding the facts alleged in the Complaint, Defendants could not have reasonably believed, based on those facts, that the plans' drafter no longer "intended under the circumstances that he [continue to] invest exclusively in employer securities." *Kuper,* 66 F.3d at 1459.

***Second***, the R&R's characterization of the Plan amendments as fiduciary acts (R&R at 39), themselves subject to ERISA's fiduciary duties, is directly contrary to United States Supreme Court

---

of Ford stock, with a small percentage or portion invested in cash or cash equivalents to provide liquidity for daily activity).

[6] *See* R&R 6-7; *see also* 2006 SSIP Plan Document § 8.1(a), amended and effective through April 13, 2006, Ford-ER00130 (emphasis added); Proposal to Amend the Tax-Efficient Savings Plan for Hourly Employees, Attachment A (proposing similar amendment to Section 8.1(a) of TESPHE), attached to Compl. as Ex. D, ER00431.

authority holding that amending retirement savings plans is a settlor function that falls outside of ERISA's fiduciary obligations. *See Curtiss Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) (an employer, even though it may act as a fiduciary when it is administering its employee welfare benefit plan, is not engaged in plan administration and thus is not acting in a fiduciary capacity when it decides to create, amend, or terminate such a plan); *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) (same as to pension plans); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) (applying rule to amendment of an employee contributory plan). The R&R's conclusion that the amendments to the Plans were fiduciary acts subject to ERISA is simply incorrect.

In short, Ford's decision, as settlor, to continue offering the Ford Stock Fund as an investment option in the Plans during the putative class period is not a "self-serving" fiduciary act. Instead, these Plan amendments were settlor acts wholly outside of ERISA's fiduciary obligations. Accordingly, the Defendants were obligated under ERISA to follow the express terms of the Plans unless they reasonably believed that Ford did not intend to continue offering Ford stock under the circumstances. Given the unambiguous and contemporaneous expressions of settlor intent throughout the putative class period, the Defendant fiduciaries could only conclude that the settlor intended to continue offering the Ford Stock Fund in the Plans.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court reverse that part of the Magistrate's recommendation that the allegations in the Complaint are sufficient to rebut the presumption of prudence afforded to the Plans' continued investment in Ford stock; and enter judgment in favor of Defendants.


Dated: April 14, 2007                       Respectfully submitted,


                                            By: s/  Robert N. Eccles
                                            Robert N. Eccles
                                            Gary S. Tell
                                            O'MELVENY & MYERS, LLP
                                            1625 Eye St., NW
                                            Washington, DC 20006-4001
                                            Telephone:  202-383-5315
                                            Facsimile: 202-383-5414
                                            gtell@omm.com
                                            beccles@omm.com

                                            By:  s/  Kathleen A. Lang
                                            Kathleen A. Lang (P-34695)
                                            Michelle Thurber Czapski (P-47267)
                                            DICKINSON WRIGHT, PLLC
                                            500 Woodward Avenue, Suite 4000
                                            Detroit, MI 48226-3425
                                            Telephone:  313-223-3500
                                            Facsimile: 313-223-3771
                                            klang@dickinsonwright.com
                                            mczapski@dickinsonwright.com

                                            *Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2008, I electronically filed the foregoing **_Defendants' Objections to the Magistrate Judge's Report and Recommendations_** with the Clerk of the Court using the ECF system, which will send notification of such filing to the counsel of record listed on the attached service list.  In addition, I placed copies of the foregoing documents in the U.S. Mail to the counsel of record listed on the attached service list.

DICKINSON WRIGHT PLLC

By: s/Kathleen A. Lang
Kathleen A. Lang (P-34695)
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
Telephone:  313-223-3500
Facsimile: 313-223-3771
klang@dickinsonwright.com

15

## SERVICE LIST

Joseph H. Meltzer
jmeltzer@sbtklaw.com
Edward W. Ciolko
eciolko@sbtklaw.com
Mark K. Gyandoh
mgyandoh@sbtklaw.com

Jayson E. Blake
jeb@millerlawpc.com
David H. Fink
dhf@millerlawpc.com
E. Powell Miller
epm@millerlawpc.com

John R. Climaco
John A. Peca
Scott D. Simpkins
CLIMACO, LEFKOWITZ
1228 Euclid Avenue, Suite 900
Cleveland, OH 44115
(216) 621-8484

Edward W. Ciolko
Gerald D. Wells, III
Joseph H. Meltzer
Schiffrin, Barroway,
280 King of Prussia Road
Radnor, PA 19087-5108

Scott D. Simpkins
Climaco, Lefkowitz,
1220 Huron Road
Suite 1000
Cleveland, OH 44115-1802

Lynn L. Sarko
Derek W. Loeser
Elizabeth A. Leland
bleland@kellerrohrback.com
Derek W. Loeser
dloeser@kellerrohrback.com
Lynn Sarko
lsarko@kellerrohrback.com

Jeffrey T. Meyers
jmeyers@morganmeyer.com

Stephen Wasinger
sfw@sfwlaw.com

Samuel H. Rudman
LERACH, COUGHLIN, STOIA,
 GELLER,  RUDMAN &
 ROBBINS LLP
58 S. Service Road
Melville, NY 11747
(631) 367-7100
SRudman@lerachlaw.com

David A. Rosenfeld
Milberg, Weiss,
One Pennsylvania Plaza
49th Floor
New York, NY 10119-0165

DETROIT 18260-2449 1037188v2

16