UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: FORD MOTOR COMPANY
ERISA LITIGATION,

Case No. 06-11718

HONORABLE STEPHEN J. MURPHY, III

_____/

**ORDER MODIFYING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This litigation presents a question that has challenged federal courts: given that the Employee Retirement Income Security Act ("ERISA") excuses certain retirement-plan fiduciaries from any duty to diversify the holdings of the plans they manage, but otherwise requires them to engage in "prudent" management, how is a court to determine when an undiversified plan of this kind has been imprudently managed?

The suit involves a claim under the Employee Retirement Income Security Act ("ERISA") against Ford Motor Company and several related persons and organizations (collectively, "Ford"). Currently before the Court are the defendants' objections to Magistrate Judge Steven Pepe's Report and Recommendation ("R&R") of denial of defendants' motion to dismiss the complaint for failure to state a claim. The facts of the case are ably set forth in the R&R, and need not be repeated here since the only issues before the Court are purely legal ones. Suffice it to say that the plaintiffs are various salaried and hourly employees who are current or former participants in the 401(k) retirement savings plans provided by Ford to its employees. They complain of Ford's management of two of these plans, the Ford Motor Company Tax-Efficient Savings Plan

for Hourly Employees and the For Motor Company Savings and Stock Investment Plan for Salaried Employees (jointly, "the plans"). At all relevant times, the governing documents of these plans required them to be invested primarily or exclusively in Ford's own stock. Ford also offered numerous other more diversified mutual funds and other investment funds; subject to minor restrictions, employees could direct their retirement savings into whichever plan they preferred.

The defendants are Ford Motor Company itself, and numerous of its employees and related organizations who were involved in administering the plans. They will collectively be referred to as "Ford." At all times relevant to this case, Ford also served as the fiduciary of the plans. The plaintiffs' allegations are that it mismanaged the plans – and thus violated ERISA – by continuing to invest them entirely in its own stock even as the company fell into financial straits.

Ford's instant motion is to dismiss the complaint, for failure to allege a breach of Ford's fiduciary duties under ERISA. Magistrate Judge Pepe recommended that the motion be denied, and Ford has filed objections to that recommendation.

**ANALYSIS**

I.  Standard of Review

A District Court's standard of review for a magistrate judge's report and recommendation depends upon whether a party files objections. With respect to portions of an R&R that no party has objected to, the Court need not undertake any review at all. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). On the other hand, Federal Rule of Civil Procedure 72(b) states, in relevant part:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Thus, the Court will conduct *de novo* review of the R&R with respect to Ford's objections.

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, —; 127 S. Ct. 1955, 1966 (2007) (citations omitted). Accordingly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). To determine whether Plaintiff has stated a claim, the Court will examine the complaint and any written instruments that are attached as exhibits to the pleading. Fed. R. Civ. P. 12(b)(6) & 10(c). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The Court will not presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). This standard requires the claimant only to put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." *Bell Atlantic*, 127 S. Ct. at 1965. Thus, although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. Sept. 25, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, —, 127 S. Ct. 1955, 1965 (2007)). Therefore, the Court will grant a motion for dismissal pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974.

II. Governing Law

This dispute is essentially over the application of the legal duties imposed by ERISA. Ford does not dispute that it was the plan fiduciary, or that ERISA duties applied to it; instead Ford claims that its conduct as alleged in the complaint did not breach those duties.

"[T]he duties charged to an ERISA fiduciary are 'the highest known to the law.'" *Chao v. Hall Holding Co., Inc.*, 285 F. 3d 415, 426 (6th Cir. 2002). ERISA, as codified at 29 U.S.C. § 1104(a)(1), sets out the standard of conduct ordinarily required of plan fiduciaries:
    [A] fiduciary shall discharge his duties with respect to a plan solely in the
    interest of the participants and beneficiaries and--
      (A) for the exclusive purpose of:
        (i) providing benefits to participants and their beneficiaries; and

>    (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

Here, Magistrate Judge Pepe concluded, and the plaintiffs do not object, that the relevant plans are Employee Stock Ownership Plans ("ESOPs"), which are a type of Eligible Individual Account Plan ("EIAP") within the meaning of 29 U.S.C. § 1107(d). Paragraph (a)(2) of 29 U.S.C. § 1104 modifies the duties applicable to the fiduciaries of EIAPs:

> In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

Thus, while ERISA recognizes that investing an entire plan in a single stock is often imprudent, in the case of EIAPs it nonetheless expressly permits these investments, while still purporting to require prudence in other respects. Courts, therefore, are in the difficult position of attempting to pass on the "prudence" of these sorts of funds without considering what would normally be regarded as their severe underdiversification. An overly strict scrutiny of EIAPs would read the diversification exemption out of the statute, while

excessively lenient review would subject the residual prudence requirement to the same fate. *Cf. Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983) (comparing Congressional policy of "encourag[ing] the formation of ESOPs" with the "equally forceful" policy of "safeguarding the interests of partipants . . . by vigorously enforcing standards of fiduciary responsibility"); *Moench v. Robertson*, 62 F. 3d 553, 570 (3d Cir. 1995).

Paralleling the tension between protecting plan assets and promoting EIAP formation is the tension between an ERISA fiduciary's duty to be prudent, on the one hand, 29 U.S.C. § 1104(1)(B), and on the other hand its duty to manage the plan in accordance with its governing documents unless other ERISA duties dictate otherwise, *id.* § 1104(1)(D). The courts have recognized that when an EIAP's governing documents require that all or most of the plan's assets be invested in the stock of the employer-settlor, the fiduciary is thus required to navigate a narrow channel between two different forms of liability – the Scylla of unwarranted disobedience to the plan documents lurks on one side, while the Charybdis of imprudence swirls on the other. In other words,

> Because an ESOP is at once a permissible form of ERISA trust and nondiversified by definition, the trustee (along with the named fiduciary) is in an awkward position. If he diversifies he violates the plan, but if he doesn't diversify he may be imposing unwanted risk on the employee-shareholders -- for it is unrealistic to suppose that the ESOP form was chosen because the employees wanted to bear unnecessary risk.

*Summers v. State Street Bank & Trust Co.*, 453 F. 3d 404, 410 (7th Cir. 2006).

In *Moench*, the Third Circuit resolved this dilemma by holding that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that

6

presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Id.* at 571. In *Kuper v. Iovenko*, 66 F. 3d 1445, 1458 (6th Cir. 1995), the Sixth Circuit adopted a similar standard:

> we review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable. A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision.

Applying this presumption, the *Kuper* court held that a fiduciary's mere "aware[ness] of events that would continue to cause [the company's] stock to decline in value" was not sufficient to create liability, when the evidence was that the stock price fluctuated throughout the relevant period. *Id.* Magistrate Judge Pepe concluded, and this Court agrees, that the *Kuper* presumption is crucial and must be applied in this case.

Judge Pepe also concluded that the defendants have pleaded facts sufficient to overcome the *Kuper* presumption of prudence. Ford's objections to this recommendation are essentially threefold. First, it objects that it cannot be liable for investing the fund solely in its own stock because the plan documents instructed it to do so. Second, Ford asserts that Magistrate Judge Pepe improperly applied the *Kuper* presumption, which (Ford claims) should bar recovery even on the facts asserted in the complaint. Third, Ford claims that Judge Pepe improperly considered its EIAPs in isolation, instead of in the context of the overall portfolio of retirement funds Ford offered to its employees. Because the overall fund is much more diversified, says Ford, considered as a whole its management has not been imprudent. The Court will consider each of these objections in turn.

7

III. Settlor-Intent Defense

The plaintiffs recognize that the plan documents themselves required plan funds to be invested primarily or exclusively in Ford stock. Ford asserts that because these were instructions to the plan fiduciary, it cannot be liable in its fiduciary role for following them, even if doing so was imprudent.

This Court is not free to do so, however, because such a holding would be contrary to the plain language of ERISA, which as noted requires fiduciaries to act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter.*" 29 U.S.C. § 1104(1)(D) (emphasis added). The Supreme Court has declared that "trust documents cannot excuse trustees from their duties under ERISA," *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985), and in *Kuper* the Sixth Circuit specifically held that

> the purpose and nature of ERISA and ESOPs preclude a plan's per se prohibition against diversification or liquidation. . . . . [A] plan provision that completely prohibits diversification of ESOP assets necessarily violates the purposes of ERISA. ERISA provides that a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA. 29 U.S.C. 1104(a)(1).

*Kuper v. Iovenko*, 66 F. 3d 1447, 1457 (6th Cir. 1995). Indeed, ERISA would be almost impotent if it permitted settlors to exempt their fiduciaries from its requirements with a simple stroke of the pen. This is especially so in a case like this one, where the settlor essentially designates itself as the fiduciary.

8

Ford asserts that Magistrate Judge Pepe grounded his recommendation on the erroneous proposition that in amending the plan to require exclusive investment in its own stock, Ford was acting as a fiduciary of the plan as opposed to its settlor. The Court is inclined to agree that the amendments were settlor acts, not fiduciary ones. But *Kuper* makes this issue superfluous: if amending the plans were indeed a fiduciary act (which seems unlikely), Ford could be liable if the amendments required imprudent management of the plans. But if in following those instructions (by acquiring and holding company stock) Ford actually did manage the plans imprudently in its fiduciary capacity, that would independently create liability under § 1104(a)(1). In other words, since in this case Ford managed the plans in accordance with the instructions that it wrote into the documents, it will be liable for any imprudence in the instructions as a result of following them, regardless of whether it would also be liable for giving them.

IV. Application of the *Kuper* Presumption

A.

Ford's most substantial objection is that it is theoretically inconsistent with *Kuper*'s presumption of prudence to permit liability even when the only factors driving down an employer's stock price are matters of public information. Ford asserts that there is "no logical limiting principle" for determining how much bad news is too much, requiring a fiduciary to divest the plan of company stock. *Cf. Summers v. State Street Bank & Trust*, 453 F. 3d 404 (7th Cir. 2006) ("determining the 'right' point, or even range of 'right' points, for an ESOP fiduciary to break the plan and start diversifying may be beyond the practical capacity of the courts"); *Pedraza v. Coca-Cola*, 456 F. Supp. 2d. at 1276 (N.D. Ga. 2006) ("If any combination of factors potentially can overcome *Moench*'s presumption, ERISA

fiduciaries are left with no meaningful guidance as to when they should, or should not, ignore an ERISA plan's requirement to offer company stock.")  As a result, Ford argues, permitting liability based only on public information amounts to a collapse back into ordinary prudence, in defiance of the *Kuper* presumption of prudence.

Ford elaborates by stressing that in the absence of a fraud on the market, fiduciaries cannot be expected to outguess the market as to how the publicly-known risks connected with a stock should be priced.  It cites *Summers*, 453 F. 3d 404, in which the Seventh Circuit noted that "it would be *hubris*" for fiduciaries to try to predict a company's future better than the market can. *Id.* at 409.  This Court does not doubt the truth of that proposition, but finds it insufficient to justify dismissal of the complaint.  The plaintiffs here do not claim that Ford should have divested the plans of Ford stock because the stock's risk was improperly priced.  Rather, they claim that the risk was so *great* that, efficiently priced or not, it was imprudent under the circumstances to subject the plan's assets to it.  Thus, plaintiffs are arguing not that the defendants should somehow have known that the market was wrong about Ford stock, but instead that the downside risk built into that price was simply intolerable for a plan of this type.  *Cf. id.* (noting the irresponsibility of investing retirement savings "in a single stock that, while worth as much as its market valuation (as far as anyone not possessing inside information could know), was extremely risky").

Ford's briefs can also be read as arguing that, because the market can be relied upon to price risk efficiently, the *Kuper* presumption means that holding a publicly-traded stock can *never* be regarded as imprudently risky.  Defendants assert that "[t]he suggestion that Ford stock could be prudent for some investors at the same time it was imprudent for *all* Plan participants reverses the presumption of prudence." Reply br., p. 4.  The Court finds

10

this argument to be unpersuasive. Indeed, if one accepts the efficient market principles on which Ford's argument is based, the risk involved in a stock becomes one of the key factors that an ERISA fiduciary (or any investor) must consider in deciding whether to buy or hold it.

Ford's argument is predicated on the fact that a stock's price is determined not just by what the corporation is worth today, but also the entire range of *potential* values that it might have tomorrow, next week, next month, and next year. Only one price in the range of potential values will become the actual value at any given time, however, which means that today's market price will also reflect the relative probabilities that the stock will attain each of its range of potential values. As a result, the market might rationally assign identical prices to Stock A and Stock B, where Stock A's value and dividends have an overwhelming likelihood of increasing slightly, and Stock B has a relatively small likelihood of exploding a hundredfold in value, but also a small likelihood of becoming completely worthless. The only rational basis on which a fiduciary could choose between two such stocks would be a consideration of their differing risk profiles in light of the purpose of the plan – and when part of that purpose is to provide savings for potential retirees, a lower level of risk is highly desirable. *See Steinman v. Hicks*, 352 F. 3d 1101, 1104 (7th Cir. 2003) ("[A]ssuming that the plan's participants were risk averse, a truncated distribution of expected returns would have been preferable . . . even if the average of those returns would be no higher or even somewhat lower."). As the *Summers* court recognized, employees are even more risk-sensitive with respect to holdings of their employers' stock, because the employers' financial fortunes will affect not just the value of its employees' EIAP accounts but their expected future wages as well. *Summers*, 453 F. 3d at 409.

For Ford's argument to carry the day, then, the Court would have to conclude that ESOP fiduciaries have no duty under ERISA to consider their plan beneficiaries' level of risk tolerance. Such a conclusion would apparently mean that the only remaining duty of such a fiduciary would be to ensure that nothing is impeding market mechanisms from accurately pricing the stock. In the Court's view, this would, in one fell swoop, demote the ERISA duty of prudence from being "the highest known to law," *Chao v. Hall Holding Co.*, 285 F. 3d 415, 426 (6th Cir. 2002), to being largely illusory. This result would be contrary not only to common sense but also to the regulations implementing ERISA, which provide that to satisfy the statutory duties a fiduciary must, among other things, "tak[e] into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action." 29 C.F.R. § 2550.404a-1(b). The Court therefore will not adopt the position advocated by Ford in this regard.

B.

Ford stresses that a requirement of either knowledge of imminent collapse or the existence of fraudulently inflated stock prices would be a much brighter line on which to premise liability. It cites several cases in which courts concluded that only in these conditions could the presumption of prudence be overcome. *E.g., In re Coca-Cola Enterprises, Inc. ERISA Litigation*, No. 1:06-CV-0953, 2007 WL 1810211, *10 (N.D. Ga. June 10, 2007); *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1275-76 (N.D. Ga. 2006) (collecting cases on both sides of this issue); *LaLonde v. Textron, Inc.*, 270 F. Supp. 2d 272, 280 (D.R.I. 2003), *vacated in part*, 369 F. 3d 1, 7 (1st Cir. 2004).

It may be true that such a rule would be more administrable than an undifferentiated standard of prudence, although the Court doubts that "imminent collapse" is as clearly

delineated a condition as Ford suggests. For the reasons just stated, however, this approach strikes the Court as insufficiently attentive to the statutory text. In the Court's view, a stock can be imprudently risky for an employee savings plan even in the absence of fraud or imminent collapse. It is entirely possible that a company built on high speculation – for instance, one with no clear path to profitability, but with possibly tremendous potential – could, without fraud, attract a huge amount of capital from highly risk-tolerant investors, and thus be in no danger of imminent collapse despite being extraordinarily risky. This Court is unable to say as a matter of law that such a company's stock could never be an "imprudent" investment for an EIAP, especially one whose participants were mostly near retirement and particularly risk-averse. *Cf. Steinman v. Hicks*, 352 F. 3d 1101, 1106 (7th Cir. 2003) (recognizing the relevance of participant characteristics).

The problem running through Ford's proposed application of the *Kuper* standard as the Court sees it is that it asks for the drawing of a bright line where Congress has declined to create one. The foregoing analysis should make clear that, if the doctrine adopted by Magistrate Judge Pepe has "no logical limiting principle," it is not because he misapplied *Kuper*'s presumption of produce, but rather because the statutory standard itself – "prudence" – has no tidy limiting principle. *Kuper* may create a presumption that a fiduciary was prudent, but it does not and cannot change this underlying standard of conduct, which must be applied through a thorough analysis of the facts of each case. In this matter as in many others, fiduciaries and courts alike must rely on common sense and experience to supplement airtight logic.

Of course, it indeed is usually imprudent for a fiduciary to hold stock that has been fraudulently inflated in value, or to hold stock in a collapsing company. To the extent the cases cited by Ford rule this way, they are certainly laudable efforts to simplify the administration of portions of the statutory standard. What Ford is asking for here, however – a declaration that these are the *only* ways in which an ESOP fiduciary can be "imprudent" under ERISA – is a complete replacement of the standard enacted by Congress with one created by the courts. Whether or not Ford's suggested standard is easier to administer than the one chosen by Congress, such a substitution is impermissible. To the extent that the cases cited by Ford conclude otherwise, the Court is unpersuaded by them.

C.

The Court notes, however, that even as a matter of pure logic, the rule articulated by ERISA and *Kuper* does not leave EIAP fiduciaries in the Sixth Circuit entirely without guidance as to how to discharge their duty of prudence. As noted above, ERISA excuses such fiduciaries from "the prudence requirement (only to the extent that it requires diversification)." 29 U.S.C. § 1104(a)(2). This is necessary because, as many courts have noted, it is almost always imprudently risky to invest most or all of a fund's assets in a single stock. *E.g., Summers*, 453 F. 3d at 406; *Steinman v. Hicks*, 352 F. 3d 1101, 1104-05 (7th Cir. 2003).

But the statutory language plainly retains the duty of prudence *except* insofar as it would dictate diversification. See *Kuper*, 66 F. 3d 1447, 1458 (6th Cir. 1995); *Moench*, 62 F. 3d at 569. As a result, this Court finds that the *Kuper* presumption of prudence means that 29 U.S.C. § 1004(1)-(2) requires fiduciaries to divest their plans of company stock when holding it becomes so risky – that is, so imprudent – that the problem could not be

fixed by diversifying into other assets. In other words, with respect to EIAPs, an abuse of discretion under *Kuper* begins (and the presumption of prudence ends) at the point at which company stock becomes so risky that no prudent fiduciary, reasonably aware of the needs and risk tolerance of the plan's beneficiaries, would invest *any* plan assets in it, regardless of what other stocks were also in that plan's portfolio.[1]

If anything, Magistrate Judge Pepe applied a standard more favorable to Ford than this one. On the one hand, he acknowledged that pleading fraud or imminent collapse is not necessary to make out an ERISA imprudence case against an EIAP fiduciary:

> nothing in *Kuper* rules out the possibility of demonstrating imprudence by [instead] showing that the stock has become excessively risky as a result of massive mismanagement; overwhelming debt and liabilities; conflicted, self-serving and disloyal fiduciaries; and the very real possibility that a company's fortunes are so diminished that it is at risk of collapse.

R&R at 27. On the other hand, the standard Judge Pepe adopted was very similar to one of imminent collapse. Specifically, he concluded that "Plaintiffs must prove that Defendants

---

[1] This standard is consistent with Magistrate Judge Pepe's conclusion (to which neither side has objected) that the *Kuper* presumption is not a mere evidentiary standard, but instead is a substantive rule of law that can be applied at the motion-to-dismiss stage. It is also at least partially consonant with the Fifth Circuit's approach in *Kirschbaum v. Reliant Energy*, 526 F. 3d 243, 249 (5th Cir. 2008). There, the court rejected one of the plaintiff's claims because it asserted not "that REI common stock was an imprudent investment per se, but rather that it was too risky for the Plan to hold in large quantities." But the court accepted another count, which "allege[d] it was imprudent for the Plan to hold even one share of REI stock." *Id.* This case is not identical to *Kirschbuam* in every respect, because there the riskiness of the company stock was alleged to arise in part from fraudulent activity. As explained previously, however, the Court does not see this distinction as a crucial one. The *Kirschbaum* court also stated that the presumption of prudence "may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes." *Id.* at 256. In the Court's view, unforeseen circumstances may be relevant to the prudence inquiry, but are not necessary for an EIAP fiduciary to be liable for a violation of the duty of prudence.

were aware of facts showing that Ford's viability as an ongoing concern was in jeopardy," or "must show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." *Id.* at p. 33 (internal quotation marks, alteration, and citation omitted).

Ford's instant objection is that Magistrate Judge Pepe applied the wrong standard, not that he misapplied the standard he adopted. Thus, the Court will not engage in a detailed review of the facts, but instead will adopt Judge Pepe's conclusion that under his standard – requiring pleading that "Ford's viability as an ongoing concern was in jeopardy" or "that the company is on the brink of collapse" – the plaintiffs have "plead[ed] substantial bases for establishing that Ford stock became an imprudent investment option for participants' retirement savings during the Class Period." *Id.* p. 33.[2] Since the plaintiffs have met this standard, the Court concludes that they have also met the standard adopted by the Court – namely, that Ford stock would not have been a prudent holding for the plans' beneficiaries even as part of a more diversified portfolio. The plaintiffs would thus survive this motion to dismiss under both prior precedent, as articulated by Judge Pepe, and under the newer formulation adopted by this Court.

V. Individual Fund or Entire Portfolio?

Ford's final objection is that the prudence of holding Ford stock should be assessed with an eye to its entire universe of retirement-plan options, rather than only in the context of the EIAPs themselves. As authority for this position, Ford cites 29 C. F. R. 2550.404a-

---

[2] Ford correctly notes that the magistrate apparently considered facts not contained in the complaint in reaching this conclusion. *Id.* p. 36. But the language quoted above indicates that Judge Pepe regarded the pleadings alone to also be sufficient. The Court's adoption of the R&R is predicated on this understanding.

16

1(b)(2)(I), which states that a fiduciary must determine "that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan." *See also Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*, 173 F. 3d 313, 322 (5th Cir. 1999) (the regulations "require[] that the investment be reasonably designed *as part of the portfolio* to further the purposes of the plan") (emphasis added). Ford's position is that because its employees were free to diversify their individual holdings by spreading them across the various funds Ford offered to them, considering the EIAPs in isolation greatly exaggerates the risks they created for the participants' savings.

The plaintiffs disagree, noting that "a fiduciary of a defined contribution, participant-driven, 401(k) plan . . . who is given discretion to select and maintain specific investment options for participants [] must exercise prudence in selecting and retaining available investment options." *DiFelice v. U.S. Airways, Inc.*, 497 F. 3d 410, 418 (4th Cir. 2007); *see also id.* n.3. As a result, they claim, Ford had a fiduciary duty to ensure that each of the funds offered in its plan was a prudent one.

The Court's analysis of the *Kuper* presumption obviates any need for further consideration of this question. The Court has already concluded that if it would be prudent to hold company stock as part of a diversified portfolio, then a fiduciary will not violate its ERISA duties by offering it as the exclusive holding of an EIAP. As a result, it makes no difference whether Ford's EIAPs are considered on its own or in conjunction with the other funds: either way, the relevant question is whether Ford stock would have been a prudent component of *any* hypothetical diversified portfolio. Since the Court has concluded that

17

plaintiffs have pleaded a claim under that standard, no further consideration of this objection is required.

## OTHER MATTERS

The plaintiffs sent a letter to the Court dated October 23d, 2008, requesting a settlement conference.[3] The defendants have responded that this letter was a violation of the Rules of Civility of this District and request an order prohibiting further such communications. Docket no. 100. The Court will grant both requests.

**WHEREFORE**, it is hereby **ORDERED** that:

Magistrate Judge Pepe's Report and Recommendation is **MODIFIED** as set forth herein, and **ADOPTED** as so modified;

Defendants' motion to dismiss the complaint for failure to state a claim on which relief can be granted is **DENIED**;

All further requests that this Court take any action shall be in the form of motions, and shall be electronically filed before a paper copy is submitted to the Court; and

The case is **REFERRED** to Magistrate Judge Steven Pepe for a settlement conference, to be scheduled by Judge Pepe.

---

[3] This letter also requested certain discovery from Ford. If the matter remains unresolved, the plaintiffs should re-assert this request as a full-fledged motion.

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: December 22, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 22, 2008, by electronic and/or ordinary mail.

        s/Alissa Greer
        Case Manager